UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT B.,[1]

                                      Plaintiff,        Case # 20-CV-1596-FPG

v.                                                                DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.
_____

## INTRODUCTION

On December 31, 2014, Plaintiff Robert B. protectively filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), alleging disability beginning on June 7, 2013, due to physical and mental complications following an assault by an inmate at the jail where he worked. Tr.[2] 191, 427-28. The Social Security Administration ("SSA") denied his claim, Tr. 228-39, and Plaintiff filed a timely request for a hearing. Tr. 241-51.

Plaintiff appeared and testified at a hearing before Administrative Law Judge Eric Glazer on April 6, 2017. Tr. 155-90. ALJ Glazer held a supplemental hearing on June 15, 2017, to obtain testimony from a medical and a vocational expert. Tr. 107-53. On October 2, 2017, ALJ Glazer issued an unfavorable decision. Tr. 200-15. Plaintiff appealed to the Appeals Council and, after written argument, the Appeals Council vacated ALJ Glazer's decision and remanded the matter for further administrative proceedings. Tr. 221-24.

On September 13, 2019, Plaintiff and a vocational expert testified before ALJ William Weir (the "ALJ"). Tr. 35-83. The ALJ issued an unfavorable decision on November 20, 2019.

---

[1] In accordance with this Court's November 18, 2020 Standing Order regarding the identification of non-government parties in social security decisions, available at https://www.nywd.uscourts.gov/standing-orders-and-district-plans, this Decision and Order will identify Plaintiff using only Plaintiff's first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF Nos. 10, 11.

1

Tr. 12-31. Plaintiff again appealed to the Appeals Council, which denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[3] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 15, 17. Plaintiff replied. ECF No. 18. For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

## LEGAL STANDARD

### I. District Court Review

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

### II. Disability Determination

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that

---

[3] The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1520.

## DISCUSSION

**I.     The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 7, 2013, the alleged onset date. Tr. 17. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative joint disease of the left shoulder; cervical degenerative disc disease; and obesity. Tr. 18. The ALJ did not discuss any other impairments.

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment. Tr. 18. Next, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b),[4] except that he could use his left, non-dominant hand or arm as an assist or guide and lift around one pound; he could lift or carry 20 pounds frequently with the right, dominant hand or arm; he needs the opportunity to sit or stand at

---

[4] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

3

will, *i.e.*, hourly but for less than two minutes without moving from the workstation; he can incidentally stoop for 5% of the workday; but he cannot work above the shoulder bilaterally or crouch or crawl.  Tr. 18-22.

At step four, the ALJ found that Plaintiff would be unable to perform any past relevant work.  Tr. 22.  At step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform—such as usher or host—and therefore, the ALJ concluded that Plaintiff was not disabled.  Tr. 22-23.

**II.     Analysis**

Plaintiff argues that (1) the ALJ failed to evaluate Plaintiff's complex regional pain syndrome ("CRPS") at step two; (2) the ALJ failed to evaluate Plaintiff's headaches at step two; (3) substantial evidence does not support the ALJ's conclusion that Plaintiff can perform the occupations of usher and host; and (4) the evidence demonstrates that the frequency of Plaintiff's medical treatment during the relevant period would render Plaintiff unable to maintain minimal standards of attendance.  ECF No. 15-1 at 20-30.  Because the Court agrees with Plaintiff's first argument, it declines to address his remaining arguments.

Although Plaintiff bears the burden of proof at Step Two to establish that his impairments are severe, it is not a heavy burden.  The Second Circuit has long held that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases."  *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014).  Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work."  SSR 85-28, 1985 WL 56856, at *3 (1985).

Here, despite evidence of the impairment, the ALJ did not mention or discuss Plaintiff's CRPS at step two, nor does it appear that he considered the effects of any associated symptoms in his analysis of the limitations caused by Plaintiff's severe impairments.[5]

Social Security Ruling ("SSR") 03-2p, "Titles II and XVI: Evaluating Cases Involving Reflex Sympathetic Dystrophy Syndrome/Complex Regional Pain Syndrome," 2003 WL 22399117 (Oct. 20, 2003), defines CRPS as a "chronic pain syndrome most often resulting from trauma to a single extremity." *Id.* at *1. CRPS presents differently than typical pain. "The most common acute clinical manifestations include complaints of intense pain and findings indicative of autonomic dysfunction at the site of the precipitating trauma. . . . It is characteristic of this syndrome that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual. When left untreated, the signs and symptoms of the disorder may worsen over time." *Id.*

Indeed, the evidence in the record demonstrates that CRPS was a medically determinable impairment during the relevant period, meeting and even exceeding the *de minimis* standard for determining severity. After Plaintiff's February 2013 left shoulder injury, Tr. 590-91, 734-36, 1036-38, Plaintiff experienced significant limitations in his left upper extremity and decreased range of motion and strength. Tr. 628-30, 657-58, 1011. In March 2017, Plaintiff's treating pain management doctor, Jafar Siddiqui, M.D., diagnosed Plaintiff with CRPS in the left upper extremity. Tr. 1544. Prior to that, in September 2016, Plaintiff reported to Dr. Siddiqui that his pain was triggered by something as light as the wind blowing over his arm. Tr. 1173. The record demonstrates that Dr. Siddiqui or other providers at his office treated Plaintiff's CRPS multiple times over the course of nearly two years. Tr. 1655-56 (June 12, 2017), 1657-59 (September 18,

---

[5] At step two, the ALJ did not address any non-severe impairments.

2017), January 24, 2018 (1660-62), 1663-65 (March 19, 2018), 1666-68 (June 10, 2018), 1669-71 (September 20, 2018), 1672-79 (December 19, 2018), 1675 (trigger point injections on December 11, 2018), 1680 (trigger point injections on April 12, 2019). Similarly, Plaintiff's treating neurologist, Shivang Josh, M.D., assessed Plaintiff for CRPS on multiple occasions. *See, e.g.*, Tr. 1597-98, 1607-09, 1618-19, 1830-31. Finally, at the hearing in September 2019, Plaintiff testified that the severity and frequency of his pain had worsened in his neck, hand, shoulder, and elbow. Tr. 45. Plaintiff testified to, and the ALJ acknowledged, the CRPS diagnosis at the hearing, Tr. 45-46, and Plaintiff's counsel raised the diagnosis at both hearings, Tr. 102-03, 66-67. Despite all of this evidence,[6] the ALJ failed to discuss—or even mention—Plaintiff's CRPS at step two.

In light of the evidence in the record establishing that Plaintiff had been diagnosed with CRPS, repeatedly complained of CRPS symptoms, and was regularly treated for his CRPS, the ALJ erred in failing to assess whether Plaintiff's CRPS was a severe impairment. *Ryan W. v. Kijakazi*, No. 20-CV-1557, 2022 WL 117955, at *3 (W.D.N.Y. Jan. 12, 2022) (concluding that ALJ's failure to address plaintiff's CRPS at step two was error). Likewise, the ALJ failed to address SSR 03-2p. *Verstreate v. Saul*, No. 1:18-CV-00308 CJS, 2020 WL 1242405, at *12 (W.D.N.Y. Mar. 16, 2020) (remanding for failure to address SSR 03-2p).

The ALJ's failure to evaluate CRPS was not harmless error. Although some of Plaintiff's symptoms could be attributable to the impairments the ALJ did find severe—degenerative joint disease of the left shoulder, cervical degenerative disc disease, and obesity—CRPS is a distinct

---

[6] The Commissioner appears to argue, *post hoc*, that there was conflicting evidence regarding whether Plaintiff had CRPS. But the ALJ never discussed any of that evidence, and the suggestion that this is the reason for glossing over the CRPS diagnosis is improper *post hoc* rationalization. *Kevin B. v. Comm'r of Soc. Sec.*, No. 19-CV-844-FPG, 2021 WL 1102997, at *3 (W.D.N.Y. Feb. 9, 2021) ("The Court declines to engage with this argument in depth because it relies on the Commissioner's post hoc rationalizations.").

impairment with distinct symptomology and effects. Accordingly, the ALJ's failure to address Plaintiff's significant pain associated with CRPS was not harmless error.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 15, is GRANTED, the Commissioner's motion for judgment on the pleading, ECF No. 17, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 9, 2022
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
United States District Judge
Western District of New York